FIDELITY AND CASUALTY COMPANY OF NEW YORK, Plaintiff,

v.

NELLO L. TEER COMPANY and Central Engineering and Contracting Corporation, Defendants.

Civ. No. C-97-D-58.

United States District Court
M. D. North Carolina,
Durham Division.

Jan. 8, 1960.

---

Bryant, Lipton, Strayhorn & Bryant, Durham, N. C., for plaintiff.

Basil M. Watkins and Charles B. Nye, Durham, N. C., for defendants.

STANLEY, District Judge.

This is an action to recover the balance alleged to be owing for insurance premiums. The defendants filed separate answers denying any indebtedness to the plaintiff.

Following a pre-trial conference and a ruling on pending motions, the parties, on August 10, 1959, filed with the court stipulations in which it was agreed that the court had jurisdiction over the parties and subject matter, and that the evidence for both parties would consist of certain interrogatories and requests for admissions, and answers thereto, submitted by the parties, and certain exhibits. It was further stipulated that neither of the parties would offer additional evidence and that the controversy might be considered and decided by the court on the basis of the documents referred to in the stipulations. Following the filing of the stipulations, the parties filed briefs in support of their contentions and orally argued the matter before the court.

After considering the pleadings, documents referred to in the stipulations, and briefs of the parties, the court now makes and files herein its Findings of Fact and Conclusions of Law, separately stated.

Findings of Fact

1. The plaintiff, The Fidelity and Casualty Company of New York, is a New York corporation and is duly licensed to transact business in the State of North Carolina. The defendant, Nello L. Teer Company, is a Delaware corporation, with its principal place of business in the City of Durham, North Carolina. The defendant, Central Engineering and Contracting Corporation, is a North Carolina corporation, with its principal office in the City of Durham, North Carolina.

2. The plaintiff is engaged in the fidelity and casualty insurance business, and the defendants are engaged in the business of constructing streets and highways.

3. This action was commenced in the Superior Court of Durham County, North Carolina, and was properly removed to this court by the defendants.

4. During the year 1953, and for many years prior thereto, the plaintiff issued numerous bonds and insurance contracts to the defendants. While the two defendants were treated jointly for the purpose of fixing their premium rates, which resulted in lower rates to each defendant than would have otherwise been possible, separate bonds and insurance contracts were issued to each defendant and the plaintiff always treated the two defendants separately and apart on its books and records and always treated its account with each defendant as a separate account.

5. For the period from January 1, 1953, through December 31, 1953, the plaintiff issued to the defendant, Nello L. Teer Company, three policies of insurance, same being Policy Nos. XA–25225, XP–145315, and C–6151503, affording Workmen's Compensation, public property damage, personal injury and general liability coverage. For the same

period, the plaintiff issued to the defendant, Central Engineering and Contracting Corporation, three policies of insurance, same being Policy Nos. XA–25224, XP–137721, and C–6155102, affording the same coverage as the policies issued to the defendant, Nello L. Teer Company. In each instance, the named insured was solely insured, and the plaintiff billed each insured separately for the insurance premiums. The six policies of insurance herein identified are the only policies involved in this litigation. The premiums on the insurance contracts in question were, in part, subject to two retrospective adjustments based on the actual losses incurred by the plaintiff from the date of issuance to periods six months and eighteen months after the termination of the policies, namely, July 1, 1954, and July 1, 1955. The pertinent provision of the policies in regard to this feature is as follows:

"Payment of Premium for Insurance Subject to Plan D.

"(a) *Standard Premium.* The named insured shall pay the standard premium to the Company in accordance with the provisions of the policies, other than this endorsement, specifying the manner of premium payment.

"(b) *Retrospective Premium.* The Company shall make a computation of the retrospective premium, based upon incurred losses valued as of a date six months after the termination of the policies, as soon as practicable after such date. The premium so computed shall be the final premium for insurance subject to Plan D if all claims have been closed or if it is apparent that the retrospective premium will exceed the maximum and if the Company, within ninety days after the promulgation of the computation, requests the organization or organizations having jurisdiction that it be the final computation. Unless such computation is a final computation, a further computation of the retrospective premium shall be made by the Company, based upon incurred losses valued as of a date eighteen months after the termination of the policies, as soon as practicable after such date.

\* \* \* \* \* \*

"After each computation, if the premium thus computed exceeds the premium paid for insurance subject to Plan D, the named insured shall pay the excess to the Company, if less, the Company shall return to the named insured the unearned portion paid by such named insured."

6. No dispute ever arose between the plaintiff and either of the defendants concerning amounts owed to the plaintiff by either of the defendants until the year 1953, during which year each of the defendants notified the plaintiff that it was going to cease doing business with the plaintiff at the end of the year 1953, the termination date of the policies in question.

7. Prior to June 17, 1954, the plaintiff had threatened to institute legal proceedings against the defendants for the collection of the premiums on the policies in question. By letter dated June 17, 1954, an officer of the defendant, Nello L. Teer Company, advised the plaintiff, in part, as follows:

"It is my desire to complete final settlement at the earliest possible date. To that end I respectfully request that the claims or anticipated losses on policies in effect prior to December 31, 1953 be evaluated by mutual agreement in order that retrospective rate adjustments can be made and final settlement had at an early date. I will thank you to furnish promptly retrospective statements on all policies written by your company setting forth your evaluation on any pending claims. You can readily understand and appreciate our reasons for desiring settlement in this manner, since all policies with your company expired as of December 31, 1953."

8. By letter dated June 22, 1954, the plaintiff advised the defendants against

making the first retrospective premium the final one, because it was "more probable that any subsequent changes as respects outstandings will result in your being due further credits than there is that such changes might make you hereafter subject to less credit than is shown by the present figures."

9. On June 28, 1954, the defendant, Nello L. Teer Company, mailed to the plaintiff its check No. 7318, in the amount of $22,016.23, together with the following cover letter:

"June 28, 1954

"Mr. Lewis C. Adair
"Supervising Manager
"Southeastern Territory
"The Fidelity and Casualty Company of N. Y.
"817 East Franklin Street
"Richmond 9, Virginia

"Re: Audit Adjustment for the period September 1, 1953 to December 31, 1953 and Retrospective Rating Premium Adjustment for the period January 1, 1953 to December 31, 1953

"Dear Mr. Adair:

"Mr. W. P. McGarry has informed me that in a teleptone conversation with you Friday, June 25, 1954, he reviewed the statement which he had prepared showing the premiums due for the period September 1, 1953 through December 31, 1953, in the sum of $58,911.33, covering all policies in effect during said period, the return premium due under retrospective adjustment upon all policies for the entire year 1953 in the amount of $37,503.25, and the maximum retrospective adjustment in the State of Pennsylvania in the sum of $608.15, making total premiums due in the amount of $59,519.48. Deducting the amount of credit due under the retrospective adjustment, in the sum of $37,503.25, there is a balance owing by our company in the sum of $22,016.23. Mr. McGarry advises me that you agreed with him regarding these figures, unless there was some error in mathematical computation. Enclosed for your convenience is a schedule containing the items and amounts involved, as prepared by Mr. McGarry.

"Since this statement and the above quoted figures include an item of $608.15 representing an additional premium charge that is due under a separate retrospective rating plan for workmen's compensation applicable to the State of Pennsylvania, we request that you forward statement of this additional premium in order that our records may be complete.

"Mr. McGarry further advises me that during the course of his conversation with you, it was also mutually agreed that the retrospective adjustment submitted by The Fidelity and Casualty Company of New York and accepted by our company was to be the final settlement between The Fidelity and Casualty Company of New York and our company, regardless of future changes in claim payments or reserves.

"Mr. McGarry also advises me that it would be satisfactory to send you a check for the net difference in the amount of $22,016.23. This letter is our confirmation of the agreement outlined hereinabove entered into with you by Mr. McGarry on our behalf. We are accordingly enclosing herewith our check No. 7318 in the sum of $22,016.23 as final settlement.

"I am glad that we could close the matter out on this basis.

"With best wishes, I am
"Very truly yours,
"(s) Nello L. Teer
For Nello L. Teer Company"
"NLT:R

10. On June 28, 1954, the defendant, Central Engineering and Contracting Company, mailed to the plaintiff its check

No. 21536, in the amount of $13,106.96, together with the following cover letter:

"June 28, 1954

"Mr. Lewis C. Adair
"Supervising Manager
"Southeastern Territory
"The Fidelity and Casualty Company of N. Y.
"817 East Franklin Street
"Richmond, 9, Virginia

"Re: Audit Adjustment for the periods Sept. 1, 1953, to Dec. Retrospective Rating Pre-31, 1953, and January 1, 1953 to Aug. 31, 1953, and mium Adjustment for the period Jan. 1, 1953 to Dec. 31, 1953

"Dear Mr. Adair:

"We are advised by Mr. W. P. McGarry that during the course of a telephone conversation with you Friday, June 25, 1954, he reviewed the audit report which he had prepared for us showing the premiums due for the period September 1, 1953 through December 31, 1953, in the sum of $21,791.40, covering all policies in effect during said period and including additional premium for policy No. XA25224 under retrospective adjustment in the sum of $1,-505.74, and the return premiums due under audit for the period January 1, 1953 through August 31, 1953, and retrospective adjustment upon all policies for the entire year 1953 in the amount of $8,684.44. This makes a net amount due you in the sum of $13,106.96. We are advised by Mr. McGarry that you agreed with him regarding these figures, unless there was some error in mathematical computation. We are enclosing herewith for your convenience a copy of the schedule containing the items and amounts involved, as prepared by Mr. McGarry.

"Mr. McGarry had also advised us that during the course of his conversation with you, it was agreed that the retrospective adjustment submitted by The Fidelity and Casualty Company of New York and accepted by our company, was to be the final settlement between The Fidelity and Casualty Company of New York and our company, regardless of future changes in claim payments or reserves. He also stated that it would be satisfactory with you for us to send a check for the net difference in the amount of $13,106.96.

"This letter is our confirmation of the agreement outlined hereinabove entered into with you by Mr. McGarry on our behalf. Therefore, we are enclosing herewith our check No. 21536 in the sum of $13,106.96 as final settlement.

"Very truly yours,

"Central Engineering and Contracting Corporation

"By (s) Hubert O. Teer"

"HOT:R

11. The letters and checks referred to in Paragraphs 9 and 10 were duly and properly received by the plaintiff, and the said checks were duly accepted and cashed by the plaintiff.

12. There is no evidence that either the plaintiff or the defendants, by the tender and acceptance of said checks, intended to violate any of the laws of the State of North Carolina or of any other state. Neither is there anything in the record suggestive of misrepresentation, fraud or mistake on the part of either party.

13. At the time of the tender and acceptance of said checks, neither the plaintiff nor the defendants knew or were able to ascertain what the full, correct amount of the premiums would be in view of the fact that the period for the second retrospective adjustment, based on actual losses incurred, would not terminate until July 1, 1955, but it was the expressed opinion of the plaintiff that said checks exceeded the maximum premium due or which would become due under said contracts of insurance.

14. As the result of the second retrospective adjustment under the terms of

the insurance policies, it developed that the plaintiff was due an additional sum of $8,631.21 from the defendant, Nello L. Teer Company, and an additional sum of $628.87 from the defendant, Central Engineering and Contracting Corporation, or a total of $9,260.13, the amount the plaintiff now seeks to recover of the defendants jointly.

### Discussion

The plaintiff, while acknowledging receipt of the two checks and cover letters of June 28, 1954, and while conceding that said checks were received and accepted as final settlement of all premiums due or to become due, contends that the settlement contracts were illegal and unenforceable. This contention is based primarily on two North Carolina Statutes,[1] and similar statutes in other states covered by policy endorsements, which prevent rebating and unlawful discrimination and favoritism by insurance companies. The plaintiff takes the position that since the figures disclosed by the second retrospective adjustment of premiums were unknown to the parties at the time of the settlements, such settlements violated the quoted statutes and are therefore against public policy and unenforceable.

On the other hand, the defendants take the position that a dispute existed between each defendant and the plaintiff in regard to the amounts owing, the handling of claims, litigation under the policies, and in other respects; that all parties were desirous of reaching a complete and final settlement with regard to all claims existing between them; that a series of conferences and negotiations culminated in the tender and acceptance of complete and final settlements; that at the time of the acceptance of the settlements, the plaintiff was of the opinion that the settlements would exceed the maximum premiums that could be collected under the policies in question; that all parties were fully capable of contracting; that there is nothing in the record suggestive of any fraud, concealment or misrepresentation on the part of any of the parties, or of any intent to violate any statute; and that the contracts should be enforced in accordance with their terms. The defendants take the further position that there was a misjoinder of parties and causes for the reasons that each of the defendants is a legal entity, that separate policies were issued to each defendant and each defendant was separately billed for insurance premiums on policies issued to it, and

1. "G.S. § 58–131.18. *Restriction on use of rates.*—No insurer subject to this article shall enter into any agreement for the purpose of making or establishing rates except in accordance with the provisions hereof. No member or subscriber of any rating bureau or insurer shall charge or receive any rate which deviates from the rates, rating plans, classifications, schedules, rules and standards made and filed by such rating bureau or insurer except as provided in this article. No insurer and no agent or other representative of any insurer and no insurance broker shall knowingly charge, demand or receive a rate or premium which deviates from the rates, rating plans, classifications, schedules, rules and standards, made and last filed by or on behalf of the insurer, or issue or make any policy or contract involving a violation of such rate filings. A rate in excess of that promulgated by the rating bureau or filed by a company on its own behalf may be charged on any specific risk provided such higher rate is charged with the knowledge and written consent of both the insured and the Commissioner."

"G.S. § 97–104.2. *General Provisions.*—No insurer subject to this article shall enter into any agreement for the purpose of making or establishing rates except in accordance with the provisions hereof. No member of the Bureau shall charge or receive any rate which deviates from the rates, rating plans, classifications, schedules, rules and standards made and filed by the Bureau. No insurer and no agent or other representative of any insurer and no insurance broker shall knowingly charge, demand or receive a rate or premiums which deviate from the rates, rating plans, classifications, schedules, rules and standards, made and last filed by or on behalf of the insurer, or issue or make any policy or contract involving a violation of such rate filings."

that there could be no joint liability on the part of the defendants for the claims asserted by the plaintiff.

While there would appear to be considerable merit in the contention of the defendants that the action should be dismissed for improper joinder of parties and causes, this question need not be decided for the reason that I am of the opinion that the defendants are entitled to prevail upon the merits.

■ The contracts of compromise and settlement, as expressed in the letter written by each defendant to the plaintiff on June 28, 1954, and confirmed by the plaintiff by accepting and cashing each of the accompanying checks, are clear and unambiguous. It is apparent and uncontradicted that the checks were intended to be in full and complete settlement of disputed and unliquidated accounts, and were intended to embrace every sum due or to become due the plaintiff as a result of the issuance of the policies in question, and also any refund that was due or to become due the defendants under said policies. Further, the acceptance by the plaintiff of said checks was an acceptance of the conditions upon which they were tendered by the defendants as expressed in each of the cover letters, and constituted a full settlement of the obligations of each defendant to the plaintiff under the policies of insurance, and barred any refund due or to become due the defendants by the plaintiff, unless the contracts are void and unenforceable.

It is my opinion that the case of Fidelity and Casualty Co. of N. Y. v. Nello L. Teer Co., 250 N.C. 547, 109 S.E.2d 171, 175, decided by the Supreme Court of North Carolina on June 12, 1959, sustains the validity of the contracts and the contentions of the defendants. In that case, The Fidelity and Casualty Company of New York, the plaintiff herein, brought suit against Nello L. Teer Company, one of the defendants herein, in the Superior Court of Durham County, North Carolina, to recover insurance premiums alleged to be owing on September 1, 1953, on some of the same policies involved in this action. There had been a previous compromise and settlement of those premiums. The settlement contract had been consummated in somewhat the same manner as the settlement agreement in this case, and the plaintiff attempted to avoid the contract for virtually the same reason as it now asserts in this action. It is true that in the state court action there was a dispute over a $12,500 item, but this is not a significant distinction. In discussing the applicability of Sections 58–131.18 and 97–104.2, General Statutes of North Carolina, to the controversy in that case, the Supreme Court of North Carolina stated:

"The statutes cited by plaintiff are intended to prevent rebating and an unlawful discrimination and favoritism by insurance companies. There is nothing in the record suggestive of an intent by either party to violate the cited statutes. To avoid an otherwise valid compromise on the ground that it is contrary to public policy, there must be some fact on which the asserted invalidity can rest. None here appears."

■ There is nothing in the record in this case to suggest that either party intended to violate any statute, or that either intended that the agreements would result in rebating, unlawful discrimination or favoritism. No fraud, concealment of misrepresentation is even asserted. The defendants do not challenge the rates charged, and there is nothing in the record to suggest that either was seeking to obtain a reduced rate by submitting the compromise offers. On the contrary, it was the expressed opinion of the plaintiff that the settlement would be to the detriment of each defendant. After having accepted, with full knowledge of all pertinent facts, an offer which it considered to be to its advantage, subsequent events should not permit the plaintiff to now alter its position and disregard its solemn agreement.

Conclusions of Law

1. The court has jurisdiction over the subject matter of this action and of the parties.

2. The contracts of compromise and settlement, as expressed in the letters written by each of the defendants to the plaintiff under date of June 28, 1954, and confirmed by the plaintiff by accepting and cashing each of the accompanying checks, are valid and enforceable according to their terms, and constitute a full and complete settlement of all obligations of each defendant to the plaintiff under the policies of insurance in question.

3. Neither defendant is indebted to the plaintiff in any amount by reason of the matters and things alleged in this action.

A judgment will be entered accordingly.